UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Benjamin T. Zeigler, | ) | Civil Action No.: 4:19-cv-02633-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| United States Department of Agriculture - Farm Service Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 24 & 25.  For the reasons stated below, the Court grants Defendant's, ECF No. 25, motion for summary judgment and denies Plaintiff's, ECF No. 24, motion for summary judgment.[1]

**Factual and Procedural Background**

Plaintiff Benjamin T. Zeigler ("Plaintiff") filed this case on September 18, 2019, alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Defendant United States Department of Agriculture - Farm Service Agency ("Defendant").  Plaintiff alleges Defendant violated FOIA by: 1) failing to comply with the Act's mandatory determination deadline; and 2) failing to promptly provide all records responsive to his FOIA request.

Plaintiff's FOIA request, dated September 20, 2018, requested the following:

> (1) All emails sent or received by USDA/FSA employee Kyle Daniel, currently FSA County Director for Georgetown County, South Carolina, from September 1, 2006 to the present;
>
> (2) All records of telephone calls made or received by USDA/FSA employee Kyle

---

[1]    Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."  Upon review of the briefs and other materials filed on the docket, the Court finds that a hearing is not necessary.

Daniel, currently FSA County Director for Georgetown County, South Carolina, from September 1, 2006 to the present;

(3) All records of use by USDA/FSA employee Kyle Daniel currently FSA County Director for Georgetown County, South Carolina, of vehicles owned by the United States government from September 1, 2006 to the present;

(4) Any complaints made against USDA/FSA employee Kyle Daniel, currently FSA County Director for Georgetown County, South Carolina, by private individuals, naming the complaining parties, and of any internal investigation of or disciplinary action taken by USDA/FSA or any other agency of the United States against or with respect to USDA/FSA employee Kyle Daniel, currently FSA County Director for Georgetown County.

FOIA request, ECF No. 1-1.

On October 2, 2018, via email, Kenn Jameson (FSA AO, State Office, Columbia) informed Plaintiff that after a thorough search, there were no records found regarding items 2, 3, and 4 of the FOIA request, listed above. Declaration of Patrick McLoughlin, FOIA Officer, Farm Production and Conservation Agency, USDA, ECF No. 25-1 at ¶ 5.  In a separate email, Mr. Jameson asked for a list of search terms or key phrases to narrow the email request, which Plaintiff agreed to provide. *Id*.

On October 4, 2018, Plaintiff provided the following list of 44 search terms:  Percheron, Persimmon, Grubbs, Waccamaw, Outdoors, Guide, Lowrimore, Lawrimore, Pine, Zeigler, Ziegler, Owens, Capps, Elliot, Deer, Duck, RMS, International, Deed, Staple, Hobcaw, Offer, Rogers, Stacey, Patriots, Sullivan, Troy, Roberts, Chandler, Clark, Ryan, Williams, Tanner, Byers, Huggins Prosser, Askins, Arkansas, Brice, Fox, Goldfinch, Joye, Ellen, and King. *Id*. at ¶ 6.

In a further attempt to narrow the email request, on October 11, 2018, Mr. Jameson asked Plaintiff to narrow the time-frame of the request.  Plaintiff agreed, and suggested splitting the date range, starting with 2012 to 2018. *Id*. at ¶ 7.  On November 7, 2018, using the first set of search terms submitted by Plaintiff, Defendant submitted an email search request for the years 2012 to

2

2018. McLoughlin Decl., ¶ 8.

Despite the requested date range of 2012 through 2018, the initial batch of potentially

responsive records identified by the Agency only covered the years 2011 through 2012. *Id*. at ¶ 12.

This first search (2011-2012) produced approximately 2.5 GB of data. *Id*.  Defendant re-submitted

the search request on July 15, 2019, for the years 2012 to 2018, using the first set of search terms.

*Id*. at ¶ 12. This time, the search identified approximately 13 GB of data. *Id*. at ¶ 14.

In total, using Plaintiff's 44 search terms, Defendant identified approximately 49,943

potentially responsive emails consisting of approximately 100,000 pages of documents, roughly

15.5 GB of data. *Id*. at ¶ 14.

On July 19, 2019, Defendant sent Plaintiff copies of emails from the first search

for records (2011-2012) and indicated that more records would follow. *Id*. at ¶ 13; Email from Kenn

Jameson, ECF No. 24-1.

Plaintiff filed the instant lawsuit on September 18, 2019.

On October 18, 2019, Defendant sent a response letter based only on emails from 2011-

2012. McLoughlin Decl., ¶ 18.  As to years 2011-2012, Defendant determined that emails within

three files consisting of 536 of 911 pages in full were appropriate for release. *Id*.  These pages were

sent to Plaintiff via UPS on July 19, 2019. *Id*.  Additionally, 2,625 of 8,950 emails in three other

files were deemed appropriate for release. *Id*.  These emails were provided to Plaintiff in electronic

form on a CD. *Id*.  Certain emails from the period 2011-2012 were considered either not relevant to

the search or withheld pursuant to Exemption 3 (information exempted from release by statute, 7

U.S.C. § 8791, prohibiting the release of information provided by agricultural producers or owners

of agricultural land, pertaining to agricultural operations, farming, conservation practices or the land

3

itself) and Exemption 6 (information the release of which would constitute a clearly unwarranted invasion of the personal privacy of a third party) of the FOIA, 5 U.S.C. § 552(b). *Id.*; Letter from Kenn Jameson, ECF No. 24-2.

Having identified approximately 100,000 pages of potentially responsive emails or 15.5 GB of data, Defendant enlisted a contractor to work full-time on Plaintiff's request. McLoughlin Decl., ¶ 19. In a further effort to narrow the search, in January 2020, the parties agreed to a new, second set of search terms using Boolean connectors. *Id* at ¶ 20. The second set of search terms were as follows: Percheron, Persimmon, Rick Grubbs, Waccamaw & Guide, Guide@wildblue.net, Lowrimore, Lawrimore, Zeigler, Ziegler, Basil Owens, John & Elliott, Johnny & Elliott, Brant & Elliott, Jimbo Capps, James & Capps, RMS, Daniel & Conservation & Easement, Rogers & Road, Griswold Tract, Conservation Bank, Phil & Roberts, Davis & Chandler, Spud & Chandler, Prosser, Doug & Joye, Ellen & King, Squires, Burrows, Dan & Stacey, Gregg & Askins, Ronald & Freeman, Nancy & Chlapecka. *Id.*

The second set of search terms resulted in identification of 77,417 pages of potentially responsive records. *Id.* at ¶ 25.

On May 11, 2020, the parties agreed to exclude certain lists that were not relevant to Plaintiff's request and to revise the set of search terms a third time. *Id* at ¶¶ 23, 25-26. The revised list of search terms were as follows: Percheron, Persimmon, "Rick Grubbs," "Waccamaw Guide," Guide@wildblue.net, Lowrimore, Lawrimore, Zeigler, Ziegler, "Basil Owens," "John Elliott," "Johnny Elliott," "Brant Elliott," "Jimbo Capps," "James Capps," RMS, "Daniel Conservation Easement," "Rogers Road," "Griswold Tract," "Conservation Bank," "Phil Roberts," "Davis Chandler," "Spud Chandler," Prosser, "Doug Joye," "Ellen King," Squires, Burrows, "Dan Stacey,"

"Gregg Askins," "Ronald Freeman," and "Nancy Chlapecka." *Id*. at ¶ 27.

Using the third set of search terms, Defendant identified 12,624 pages of potentially responsive records within the original approximately 16 GB of data. *Id* at ¶ 47. Defendant trained two full-time contract employees to assist Agency FOIA staff with the review and processing of Plaintiff's request, a process that took hundreds of hours to complete. Supplemental Declaration of Patrick McLoughlin, ECF No. 29-1 at ¶ 9.

After narrowing the potentially responsive records to 12,624 pages, Defendant's FOIA staff and two contract employees applied the 10-factor test set forth in *Burea of National Affairs (BNA), Inc. v. United States Department of Justice*, 742 F.2d 1484 (D.C. Cir. 1984), to determine whether Kyle Daniels's emails were "agency records" subject to FOIA disclosure or the "personal records" of an individual agency employee. *Id*. at ¶¶ 10-12. Defendant applied the *BNA* decision's 10 factors as follows:

> *Creation* --Was the document created by an agency employee on agency time, with agency materials, at agency expense? (if not, then it very likely is not an "agency record," on that basis alone.). Mr. Daniel created personal emails on agency time using his work computer. Mr. Daniel does not appear to have used agency materials other than his computer, space on the server and agency time to create the e-mails.
>
> *Content* -- Does the document contain "substantive" information? (If not, then it very likely is not an "agency record," on that basis alone.) Does it contain personal as well as official business information? The emails we characterized as personal do not contain substantive agency information. The e-mails are primarily about hunting, organizing hunting trips, (hundreds of emails from hunting guide Rick Grubbs, Mr. Daniel's business partner), organizing who will work concessions at ball games, Booster Club board meetings and various activities, basketball and baseball schedules, weekly church group reading packets, trips to Clemson football games, and various other personal, non-work related emails.

*Purpose* -- Was the document created solely for an individual employee's personal convenience? Alternatively, to what extent was it created to facilitate agency business? It seems that Mr. Daniel used his work email as a personal account, for both work and personal reasons, because it was convenient for him to do so. The emails we characterized as personal do not facilitate agency business.

*Distribution* -- Was the document distributed to anyone else for any reason, such as for a business purpose? How wide was the circulation? We characterized as personal the emails that Mr. Daniel initiated which related to personal matters, such as organizing hunting trips, discussing the park board, and organizing schedules for ball games or who would work concessions, or ordering uniforms, etc. As previously stated, he received numerous emails from many of his friends and people in the community. Regarding the e-mails we characterized as personal, these e-mails were not distributed within the agency.

*Use* -- To what extent did the document's author use it to conduct agency business? Did others use it? For the emails we characterized as personal, there was no agency business being conducted. Mr. Daniel was using his government e-mail account for personal use. If in Mr. Daniel's emails agency business and personal matters were intertwined, we erred on the side of transparency and either released or redacted the personal, and released the agency-related information.

*Maintenance* -- Was the document kept in the author's possession, or was it placed in an official agency file? All of the emails were in Mr. Daniel's email inbox/outbox. The e-mails we characterized as personal were not integrated into an official agency file. There is no official agency file for email. Emails are stored on a server until they are removed based on the agency retention policy.

*Disposition* -- Was the document's author free to dispose of it at his personal discretion? What was the actual disposal practice? Mr. Daniel could delete emails at any time but given my function as National FOIA Officer, I can request even deleted emails if requested through FOIA and that request is then processed by a special team within OCIO.

*Control* -- Has the agency attempted to exercise "institutional control" over the document through applicable maintenance or disposition regulations? Did it do so by requiring the document to be created in the first place? None of the emails we characterized as personal were

required to be created. E-mails are removed from the server in
accordance with agency record retention policy.

*Segregation* -- Is there any practical way to segregate out any personal
information in the document from official business information? Yes.
We segregated personal and agency business matters on an e-mail by
e-mail basis and, erring on the side of transparency, released what was
agency-related and redacted what was personal. We undertook this
process in good faith, using the 10-factor analysis.

*Revision* -- Was the document revised or updated after the fact for
record-keeping purposes? Once emails are sent or received there is no
way to revise them or alter them in any way. As previously stated, we
are able to gather emails from a special team and not directly from the
individual who may be the subject of a FOIA Request.

*Id*. at ¶ 14.

Between June 17, 2020 and December 11, 2020, Defendant released to Plaintiff sixteen

batches of emails. McLoughlin Decl., ¶¶ 29-46; Brief of Defendant, ECF No. 25 at 4-5.  In total,

12,624 pages of Mr. Daniels's emails were reviewed. *Id*. at ¶ 47.  During that period, Defendant

disclosed 1,040 pages of Mr. Daniels's emails and determined that 11,279 pages of Mr. Daniels's

emails were not "agency records" subject to disclosure under FOIA. *See id*. at ¶¶ 29-46.

Additionally, 305 pages of Mr. Daniels's emails were withheld under one or more of the statutory

FOIA exemptions. *Id*.

On February 10, 2021, Plaintiff filed a motion for summary judgment. ECF No. 24.

Defendant filed its own motion for summary judgment and a response in opposition to Plaintiff's

motion for summary judgment on March 8, 2021. ECF No. 25.  Plaintiff filed a response to

Defendant's summary judgment motion on March 22, 2021, and Defendant filed a reply to Plaintiff's

response on April 12, 2021. ECF Nos. 27 & 29.

On July 7, 2021, this Court ordered Defendant to provide the Court with a representative

7

sample of two percent (2%) of the withheld documents for *in camera* review. ECF No. 31.  The Court also ordered Defendant to file a *Vaughn* index of the 2% representative sample.[2] *Id.*

On August 5, 2021, Defendant submitted the 2% representative sample to chambers for *in camera* review[3] and filed the *Vaughn* index.   Plaintiff filed a supplemental brief in response to the Defendant's *Vaughn* index on August 19, 2021.  Defendant filed a short reply to Plaintiff's supplemental brief on August 25, 2021.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the

---

[2]    Representative sampling is an appropriate procedure to test an agency's claim that a document is properly withheld or exempt from disclosure under FOIA when a large number of documents are involved. *Neely v. FBI*, 208 F.3d 461, 467 (4th Cir. 2000) (suggesting that, on remand, district court "resort to the well-established practice... of randomly sampling the documents in question"); *Mullen v. U.S. Army Crim. Investigation Command*, No. 1:10CV262 JCC/TCB, 2011 WL 5870550, at *6 (E.D. Va. Nov. 22, 2011) (internal citations omitted). Representative sampling allows the Court and the parties to reduce a voluminous FOIA case to a manageable number of items that can be evaluated individually through a Vaughn index or an in camera inspection. *Mullen*, 2011 WL 5870550, at *6.

[3]    The Court has filed the *in camera* submission under seal with access by the Court. *See* ECF No. 37.

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with

some evidence beyond the mere allegations contained in the pleadings to show that there is a

genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The

nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory

allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the

nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions,

interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### Discussion

**I.    Mandatory Determination Deadline and Prompt Disclosure (Plaintiff's Timeliness Claims)**

Plaintiff's complaint alleges two causes of action: 1) failure to comply with FOIA's

mandatory determination deadline; and 2) failure to promptly provide all responsive records related

to the FOIA request. The FOIA provides that when a government agency receives a proper FOIA

request, it "must determine within twenty (20) working days (excepting Saturdays, Sundays, and

legal public holidays) after the receipt of any such request whether to comply with such request." 5

U.S.C. § 552(a)(6)(A)(I). The FOIA also provides that "each agency, upon any request for records

which (i) reasonably describes such records and (ii) is made in accordance with published rules

stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly

available to any person." 5 U.S.C. § 552(a)(3)(A).

To the extent Plaintiff's claims are based on Defendant's delay (as opposed to improper withholding of documents) in making a determination as to whether Daniels's emails were "agency records" or "personal records," or based on Defendant's delay in releasing responsive records, those claims became "moot" when Defendant processed and released the requested records it believed responsive. *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (FOIA requester's claim challenging tardiness of FBI in responding to request was rendered moot by FBI's response to request). The improper withholding of documents claim is not moot.

Further, contrary to Plaintiff's arguments, Defendant did not waive or forfeit FOIA exemptions or the determination as to which records were "agency records" under FOIA by failing to assert the claims within 20 days. *See Young v. C.I.A.*, 972 F.2d 536, 538-39 (4th Cir. 1992) ("an agency does not waive FOIA exemptions by not raising them during the administrative process"). When an agency fails to meet FOIA's explicit timelines, the penalty is not waiver of exemptions, but rather "[t]he 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 189 (D.C. Cir. 2013). The FOIA "provides an incentive for agencies to move quickly but recognizes that agencies may not always to be able to adhere to the timelines that trigger the exhaustion requirement." *Id*.

While Defendant did not waive FOIA exemptions or determinations, Plaintiff is deemed to have exhausted his administrative remedies based on the Defendant's failure to meet FOIA's deadlines.

## II.     Adequacy of the Search

10

Defendant moves for summary judgment arguing that it complied with FOIA in that a reasonable search was conducted, responsive records were identified, and those records were produced in 16 phases with lawful exemptions claimed for records withheld and for the redactions made.  Plaintiff appears to concede that Defendant conducted an adequate search for responsive documents stating "the consternation here is not about whether a search by Defendant has located the responsive documents: such appears satisfactory." Plaintiff's response to Defendant's motion for summary judgment, ECF No. 27 at 13.

The FOIA requires governmental agencies to provide, upon request, information to the public if the request "reasonably describes" the record sought and is made in accordance with published agency guidelines for making such requests. 5 U.S.C. § 552(a)(3)(A). "In responding ... to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format ...." § 552(a)(3)(C). The requirement to "search" "means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." § 552(a)(3)(D).

In judging the adequacy of an agency search for documents, the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has "demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1246 (4th Cir.1994) (quoting *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C.Cir.1983)).

FOIA does not require a perfect search, only a reasonable one. *See Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 362 (4th Cir. 2009); *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C.Cir.1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the

11

reasonableness of the effort in light of the specific request."). A "reasonably calculated search" does not require that an agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances. *Rein*, 553 F.3d at 364.

"In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure." *Ethyl Corp.*, 25 F.3d at 1246-47. Rather, the affidavit must be reasonably detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search. *Id.*; *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The government may rely upon affidavits to show it has conducted a reasonable search as long as they are "relatively detailed and nonconclusory and ... submitted in good faith." *Marriott Employees' Federal Credit Union v. National Credit Union Admin.*, No. Civ. A. 96–478–A, 1996 WL 33497625, at *8 (E.D.Va.1996) (citing *Weisberg*, 705 F.2d at 1351).

In this case, Plaintiff submitted the declarations of Patrick McLoughlin, FOIA Officer for the Farm Production and Conservation Agency-Business Center. *See* ECF Nos. 25-1, 29-1. According to the declarations, Defendant was unable to find any documents responsive to items 2, 3, and 4 of Plaintiff's FOIA request (i.e. records of telephone calls made or received by Kyle Daniel, records of use of USDA vehicles by Kyle Daniel, complaints made against Kyle Daniel by private individuals, or any internal investigations or disciplinary action taken by USDA against Kyle Daniel). McLoughlin Decl., ¶ 5. Plaintiff does not dispute that Defendant was unable to locate documents

responsive to items 2, 3, and 4, of Plaintiff's FOIA request and makes no argument that Defendant's search for items 2, 3, and 4 was not adequate.

As to item 1 of Plaintiff's FOIA request (all emails sent or received by Kyle Daniel), McLoughlin's declaration details Defendant's efforts to locate responsive emails. Initially, Plaintiff requested all of Kyle Daniels's emails from September 1, 2006 through September 20, 2018. Shortly after submitting the request, Plaintiff provided Defendant with a list of 44 search terms. *Id*. at ¶ 6. Using Plaintiff's 44 search terms, Defendant identified approximately 49,943 potentially responsive emails consisting of approximately 100,000 pages of documents - almost 16 GB of data. *Id*. at ¶ 14. In January 2020, the parties agreed to a new, second set of search terms using Boolean connectors. *Id*. at ¶¶ 20-21. The second set of search terms resulted in identification of 77,417 pages of potentially responsive records. *Id*. at ¶ 25. The parties then agreed to a third set of search terms, which utilized quotation marks around key names and phrases. *Id*. at ¶ 27. Using the third set of search terms, Defendant identified 12,624 pages of potentially responsive records within the original 16 GB of data. *Id*. at ¶ 47.

On the record before the Court, there is no genuine issue of material fact that the Defendant's searches were adequate. There is no reason to doubt the credibility of McLoughlin's declarations, which appear to have been submitted in good faith and set forth in detail the Agency's efforts to locate responsive documents. The Court finds there is no genuine issue of material fact as to whether Defendant fulfilled its obligation under FOIA to perform a search "reasonably calculated to uncover all relevant documents." *See Ethyl Corp.*, 25 F.3d at 1246. Defendant is entitled to summary judgment regarding the adequacy of the search for responsive documents.

III.     "Agency Records" vs. "Personal Records"

Using the third set of search terms agreed to by the parties, Defendant identified 12,624 pages of potentially responsive emails.  Of those 12,624 pages, Defendant withheld approximately 11,279 pages after determining that those pages were the "personal records" of Kyle Daniel and not subject to FOIA disclosure. *See* McLoughlin Decl., ¶¶ 29-47.  Although Plaintiff does not contest the adequacy of Defendant's search for relevant documents, Plaintiff does challenge Defendant's decision to designate the majority of potentially responsive emails as the "personal records" of Kyle Daniel not subject to FOIA disclosure.

Under FOIA, a disclosure action will lie only on a showing that an agency has "(1) 'improperly;' (2) 'withheld;' (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).  "An agency presented with a request for records under FOIA is required to produce only agency records, which are those that are either created or obtained by the agency and are subject to the control of the agency at the time the FOIA request is made." *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1247 (4th Cir. 1994).  "[P]ersonal records of an agency employee are not agency records and are not subject to the FOIA." *Ethyl Corp.*, 25 F.3d at 1247. "[C]ase law makes clear that 'the term "agency records" is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency.'" *Gallant v. N.L.R.B.*, 26 F.3d 168, 171 (D.C. Cir. 1994) (citing *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989)).  "Nor does the statute 'sweep into FOIA's reach personal papers that may "relate to" an employee's work . . . but which the individual does not rely upon to perform his or her duties.'" *Gallant*, 26 F.3d at 171 (citing *Bureau of Nat. Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1493 (D.C. Cir. 1984)).

"The requirement that materials sought by a private party be 'agency records' is jurisdictional

14

- only when an agency withholds an agency record does the district court have authority to compel disclosure." *Bureau of Nat. Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1488 (D.C. Cir. 1984). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly withheld.'" *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).

To qualify as an "agency record" subject to FOIA disclosure rules, the agency must: 1) create or obtain the requested materials; and 2) be in control of the requested materials at the time the FOIA request is made. *Tax Analysts*, 492 U.S. at 144.  As to the second prong of the *Tax Analysts* test, four factors are relevant to a determination of whether an agency exercises sufficient control over a document to render it an "agency record": "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).  These four factors are commonly referred to as the *Burka* factors. *Democracy Forward Foundation v. U.S. Gen. Servs. Admin.*, 393 F. Supp. 3d 45, 51 (D.D.C. 2019).

In this case, the Court ordered Defendant to provide the Court with a representative sample of two percent (2%) of the withheld documents for *in camera* review and ordered a *Vaughn* index of the two percent sample.  Defendant filed the *Vaughn* index.

The Court has reviewed Defendant's *in camera* submission, along with the *Vaughn* index, and concludes that the Defendant properly deemed the withheld materials to be the personal records of Kyle Daniel not subject to disclosure under FOIA.

15

The majority of the withheld emails consist of emails between Daniel and his business partner, with whom Daniel had a hunting business. These emails discuss various aspects of the hunting business such as the number of hogs killed in the past year, obtaining tags to hunt turkeys, different animals caught on trail cameras, acquiring land through sale or lease to hunt, weather, taxes paid on hunting land, etc. Other withheld emails include emails between Daniel and his Sunday School class, members of the community regarding local athletics, Junior Legion, and Booster Club. There are also some emails that involve personal real estate transactions and other personal business. With regard to the emails reviewed by the Court *in camera*, the emails designated as "personal" do not contain substantive or official agency information and they do not appear to facilitate any agency business.

The declarations of Patrick McLoughlin, FOIA Officer for the Farm Production and Conservation Agency, indicate that no agency employees used or relied on any of the emails designated as "personal" to carry out agency business and the emails did not facilitate any agency business. McLoughlin Decl., ¶¶ 48-50; Supp. McLoughlin Decl., ¶¶ 14-18. Based on the Court's review of the representative sample, it would be unreasonable to conclude otherwise. McLoughlin also indicates that the emails designated as "personal" were not placed in any agency file. Plaintiff has not offered sufficient evidence to create a genuine dispute as to those key facts set forth in McLoughlin's declarations.

As to the *Burka* factors, the Court concludes there is no genuine issue of material fact that the Defendant did not have sufficient *control* over Daniel's personal emails necessary to render them "agency records."

In considering the first *Burka* factor - the intent of the document's creator to retain or

16

relinquish control over the records - the "relevant inquiry" "focuses on the *agency's intent* as the creator of the document, rather than the individual employee's intent when generating the document in the course of his or her employment." *Cause of Action Institute v. White House Office of Mgmt. & Budget*, C.A. No. 18-1508, 2019 WL 6052369, at * 9 (D.C. Cir. Jan. 15, 2019) (emphasis added). McLoughlin's supplemental declaration indicates that "[n]one of the emails we characterized as personal were required to be created.  Emails are removed from the server in accordance with agency record retention policy." Supp. McLoughlin Decl., ¶ 14.  McLoughlin also states that Daniel could delete the emails at any time and the emails were not integrated into any official agency file. *Id*.  The first *Burka* factor supports the conclusion that Defendant lacked the necessary intent to retain control over the emails.

The second *Burka* factor concerns the ability of the agency to use and dispose of the records as it sees fit. *Burka*, 87 F.3d at 515.  While the Defendant could dispose of the personal emails under the agency's email retention policy, Daniel could also have deleted the emails at any time. However, with regard to the emails that were characterized as personal, there was no agency business being conducted and the emails did not contain substantive agency information. Supp. McLoughlin Decl., ¶ 14.  Thus, the Agency could not make use of Daniel's personal emails involving his hunting business, Sunday School, Booster Club, recreational soft ball, etc.  The second *Burka* factor supports the conclusion that Defendant lacked sufficient control over Daniel's emails to render them agency records.

The third *Burka* factor - the extent to which agency personnel have read or relied on the emails - is "the decisive factor." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927 (D.C. Cir. 2011) (stating "[i]n deciding whether an agency controls a document its employees

created, we have consistently found that 'use is the decisive factor'").  In considering this "use" factor, the court is to inquire into "the purpose for which the document was created, the actual use of the document and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." *Cause of Action Institute*, 2019 WL 6052369, at * 10 (citing *Bureau of Nat'l Affairs*, 742 F.2d at 1493).  McLoughlin's supplemental declaration states that the withheld emails did not facilitate agency business and were not distributed within the agency. Supp. McLoughlin Decl., ¶ 14.  The Court's review of the *in camera* submission and *Vaughn* index supports McLoughlin's declaration. There was no agency business being conducted with respect to the emails characterized as personal. *Id*.  Thus, there is no basis to conclude that agency personnel have read or relied on the emails *to carry out the business of the agency*.  The third *Burka* factor, which courts have noted is the "decisive factor," supports Defendant's position that the withheld emails were personal records rather than agency records.

The fourth *Burka* factor - the degree to which the documents were integrated into the agency's record system or files - also weighs in favor of a finding that the withheld emails are personal and not subject to FOIA.  The emails were not integrated into any official record or file, but rather were simply maintained on the server where employee emails are stored. McLoughlin Decl., ¶ 50; Supp. McLoughlin Decl., ¶ 14.  The emails were not required to be maintained by the agency.  As noted in the second *Burka* factor, but also relevant to the fourth *Burka* factor, Daniel could have deleted the emails at any time.

Plaintiff relies on emails that Defendant disclosed, *See* Exhibits 1-6 to Plaintiff's Supplemental Briefing in Response to Defendant's *Vaughn* Index, ECF No. 34-1 - 34-6, to make the

argument that Defendant improperly withheld identical or substantially identical emails as personal records.  Comparing the *in camera* submission to Plaintiff's exhibits, the emails that were disclosed that Plaintiff cites do not appear to be identical in all respects to the emails withheld as personal records.  Unlike the withheld emails, many of the emails that Plaintiff references in his attached exhibits were forwarded to other agency employees.  For example, Daniel apparently forwarded to other agency employees an email containing a picture of a black bear caught on a trail camera and another email about a beaver trapper being in the area.  However, merely forwarding these emails to other agency employees is not dispositive.  The decisive *Burka* factor is the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency. *See Bureau of Nat'l Affairs*, 742 F.2d at 1493.  There is nothing to suggest the withheld emails were relied on by agency employees in the conduct of official duties or to carry out the business of the agency.

The Court does not conclude that Defendant acted in bad faith by releasing versions of emails that were similar to emails withheld as personal records.  To the contrary, the disclosed emails attached to Plaintiff's Supplemental Briefing demonstrate that Defendant acted in good faith, erring on the side of disclosure when the subject matter of the email could arguably include both personal and agency business. Supp. McLoughlin Decl., ECF No. 29-1 at ¶¶ 6, 14.

Plaintiff argues that Daniel engaged in illegal gambling, operating no less than three private enterprises for hunting and guiding, purchasing, selling, and leasing hunting/farm land, and Hatch Act violations.  With regard to the allegation of Hatch Act violations, Plaintiff does not

meaningfully elaborate on this point.[4]  To the extent Plaintiff participated in a football betting pool, that fact does not render his emails "agency records."  Plaintiff accuses Daniel of using his government position for personal gain and seems to argue that Daniel's emails should be considered agency records for that reason.[5]  The question is not whether Daniel may have used his position for personal gain, the question is whether the emails sought are properly considered "agency records" or "personal records" under relevant case law.  Considering the *Tax Analyst* test and *Burka* factors, especially the extent to which agency personnel have read or relied on the withheld emails to carry out the business of the agency, along with McLoughlin's declarations, the briefs, *Vaughn* index, and the *in camera* submission, the Court concludes that Defendant properly determined the documents at issue to be personal records.

In conclusion, the *Tax Analyst* test and *Burka* factors compel the conclusion that the withheld emails that Defendant characterized as "personal" were properly withheld.  There is no genuine issue of material fact that Defendant lacked the requisite control over Daniel's emails necessary to render them agency records.  For those reasons, Defendant is entitled to summary

---

[4]    In its review of the *in camera* submission, the Court did come across an email from Daniel to Raleigh Ward, FSA - District Director, inviting Ward and another individual to a "political supper" attended by several key politicians from both parties. ECF No. 37 at 189.  Regardless of any alleged Hatch Act violation, which is not before the Court, Defendant properly withheld this email as "personal" and not an "agency record" as it does not contain substantive or official business information, does not facilitate agency business, was not used to conduct agency business and no other employees in the agency acting within the scope of their employment used or relied on the emailed information to carry out agency business.  The document was not placed in an official agency file, the agency did not require that the document be created, and the email is personal in nature and was created for personal convenience. *See Vaughn* Index, ECF No. 33-1 at 47.

[5]    Throughout the briefing, Plaintiff makes vague references to corruption, potential conflicts of interest, and self-dealing, but never elaborates on these general and conclusory allegations.  It is worth noting that McLoughlin's declaration states "we did not find what Plaintiff asserts as 'corruption' and used a good faith application of the 10-factor test in determining what were agency records and what were personal records." Supp. McLoughlin Decl. ¶ 17.

judgment on the issue of whether the agency properly withheld Daniel's emails as "personal records" rather than "agency records" subject to disclosure under the FOIA.

### Conclusion

For the reasons stated above, the Court **GRANTS** Defendant United States Department of Agriculture - Farm Service Agency's [ECF No. 25] motion for summary judgment.  Plaintiff Benjamin T. Ziegler's [ECF No. 24] motion for summary judgment is **DENIED**.  This case is hereby **DISMISSED with prejudice**.

IT IS SO ORDERED.

September 10, 2021                              s/ R. Bryan Harwell____
Florence, South Carolina                     R. Bryan Harwell
                                                          Chief United States District Judge